KOBLITZ, J.A.D.
*159 K.K. appeals from the July 27, 2016 final agency decision of the Department of Human Services, Division of Medical Assistance and Health Services (DMAHS) denying him coverage under the New Jersey Medical Assistance and Health Services Act, (Medicaid), N.J.S.A. 30:4D-1 to -19.5, because he "had not been a permanent resident for five years or more." Because K.K. was a legal permanent resident (LPR) before August 22, 1996, we reverse based on the plain wording of the Medicaid eligibility statute, N.J.S.A. 30:4D-3(q)(1)(a).
K.K., an eighty-eight-year-old man, first became an LPR of the United States on July 15, 1991. K.K. worked in the United States for at least forty qualified quarters (ten years), and received a modest social security benefit of $226 per month in 2015. K.K. gave up his LPR card in 2007 upon leaving the United States. Seven years later, in 2014, K.K. returned to the United States and obtained a new LPR card.
On June 16, 2015, he applied for Medicaid benefits through the Somerset County Board of Social Services (SCBSS). His application was denied two months later on the basis that he had not *160 been an LPR of the United States for five years or more. K.K. appealed and the matter was referred to the Office of Administrative Law. N.J.S.A. 52:14B-1 to -15; N.J.S.A. 52:14F-1 to -13. The supervisor of Adult Medicaid for the SCBSS testified that when K.K. applied for Medicaid, both his new LPR card and the agency computer system noted an entry date of July 2014, with no indication that he had previously resided in the country. His application stating his 1991 entry was not considered. K.K. was thus rejected because the computer records reviewed reflected he had not been an LPR for five years, as required of someone who entered the United States after August 22, 1996. At the hearing, K.K. proved he had entered the United States in 1991 and received an LPR card in 1996, which he surrendered upon leaving the country in 2007. His LPR card was at that time set to expire in 2015, after he applied for Medicaid. The card he obtained upon reentry in 2014 is valid until 2024. Both cards have the same identification number. The Administrative Law Judge (ALJ) issued an initial decision affirming *734 the Medicaid denial on the basis that K.K. surrendered his card and obtained a new one. The ALJ determined that K.K. had thus fully abandoned his original LPR status. DMAHS adopted the ALJ's decision.
"Appellate review of an agency's determination is limited in scope." Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9, 970 A.2d 347 (2009). As our Supreme Court has made clear, "[i]n administrative law, the overarching informative principle guiding appellate review requires that courts defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." In re Virtua-West Jersey Hosp., 194 N.J. 413, 422, 945 A.2d 692 (2008). We are bound to uphold the administrative agency decision "unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." Ibid. (citing In re Herrmann, 192 N.J. 19, 28, 926 A.2d 350 (2007) ).
*161 "A court is in no way bound by an agency's interpretation of a statute or its determination of a strictly legal issue. [If] an agency's determination ... is a legal determination, the appellate court's review is de novo." L.A. v. Bd. of Educ. of City of Trenton, Mercer Cty., 221 N.J. 192, 204, 110 A.3d 914 (2015) (citation omitted). Our Supreme Court has explained that a state agency interpretation of a federal statute should be reviewed de novo and without deference to the agency. In re RCN of NY, 186 N.J. 83, 92, 892 A.2d 636 (2006).
" Medicaid was created by Congress in 1965 to provide medical services to families and individuals who would otherwise not be able to afford necessary care." S. Jersey Family Med. Ctrs., Inc. v. City of Pleasantville, 351 N.J. Super. 262, 274, 798 A.2d 120 (App. Div. 2002) (citation omitted). "The Medicaid program is fairly characterized as a 'cooperative federal-state endeavor' where, in return for federal monies, states must comply with federal requirements." A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 342, 971 A.2d 403 (App. Div. 2009) (quoting L.M. v. State, Div. of Med. Assistance & Health Servs., 140 N.J. 480, 484, 659 A.2d 450 (1995) ). Thus we review de novo how Medicaid interacts with federal immigration law, U.S.C. § 1101(a)(13)(C), and the federal Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWOR[1] ). Levine v. State, Dep't of Transp., Div. of Motor Vehicles, 338 N.J. Super. 28, 32, 768 A.2d 192 (App. Div. 2001).
The Legislature amended Medicaid to comply with PRWOR. PRWOR was enacted by Congress to continue the federal immigration policy of promoting self-sufficiency and self-reliance of immigrants to reduce the burden on public benefits such as Medicaid. 8 U.S.C. § 1601.
If an LPR was present in the United States prior to August 22, 1996, or if an LPR entered after that date but *162 maintained a continuous residency for at least five years, she or he is eligible for Medicaid. A.B., 407 N.J. Super. at 350-51, 971 A.2d 403 (holding that brief visits to the United States prior to August 22, 1996 do not qualify an individual for Medicaid).
K.K. argues that because he lived in the United States and received an LPR card prior to August 22, 1996, he qualifies *735 for Medicaid and "the analysis should end" there. DMAHS argues that any permanent resident who enters the United States after August 22, 1996, is subject to the five-year waiting period, even if the individual was an LPR before August 22, 1996. DMAHS urges that K.K. should be treated for Medicaid eligibility purposes as he was treated by the United States Citizenship and Immigration Services when he sought readmission in 2014. After an absence that exceeded 180 days, pursuant to U.S.C. § 1101(a)(13)(C)(ii), he was treated as if he were entering the country for the first time. "[I]f a lawful permanent resident falls into one of the six subsections [under U.S.C. § 1101(a)(13)(C)], the clear import [ ] is that he is stripped of his lawful permanent residence. That is, he becomes an alien seeking admission as if he were entering for the first time." Taveras v. AG of the United States, 731 F.3d 281, 290 (3d Cir. 2013) (citation omitted). DMAHS reasons that if K.K.'s residency status resets, so should his Medicaid eligibility. That position, however, is not supported by Medicaid-specific regulations.
A 2007 Federal Register instruction regarding means-tested public benefits such as Medicaid reads:
If the applicant entered the United States before August 22, 1996 and obtained qualified alien status before that date, he or she is eligible for all federal means-tested public benefits for which he or she satisfies all programmatic eligibility requirements. You should not engage in any further verification of immigration status for those persons.
[ 62 Fed. Reg. 61415 (Nov. 17, 1997) (emphasis added).]
The United States Department of Health and Human Services Centers for Medicare and Medicaid Services answered questions on the eligibility of permanent residents to receive Medicaid, stating that continuous presence in the country was not required.
*163 Question nine states: "What does it mean to [ ] remain 'continuously present' in the United States?" It answered:
Any single absence from the United States of more than 30 days, or a total aggregate of absences of more than 90 days, is considered to interrupt "continuous presence." Once an immigrant obtains qualified alien status, he or she does not have to remain continuously present in the United States in order to avoid application of the five-year bar. "Continuous presence" is discussed in more detail in DOJ's Interim Guidance at 62 Federal Register 61415.
[Department of Health and Human Services Centers for Medicare and Medicaid Services "Questions and Answers on the Five-Year Bar," http://library.niwap.org/wp-content/uploads/2015/pdf/PB-faq-QA5YearBar-06.23.04.pdf (last visited December 12, 2017) (emphasis added); A.B., 407 N.J. Super. at 338, 971 A.2d 403.]
A lapse in continuous presence is thus permitted, so long as an individual has already obtained qualified alien status.
62 Federal Register 61415 states:
TANF, Medicaid, and SSI are federal means-tested public benefits that are not otherwise exempted under [PRWOR]. ... The eligibility of qualified aliens for federal means-tested public benefits turns on [1] whether they entered the U.S. before August 22, 1996, [2] the number of years since they obtained qualified alien status, [3] their particular immigration status, and [4] the specific benefits they were seeking.
K.K. entered before August 22, 1996 and obtained LPR status. K.K.'s absence from *736 the country for seven years after reaching the age of sixty-five relieved the government of making Medicaid payments during that time, thus safeguarding the taxpayer's resources. In light of federal immigration policy intended to reduce the burden on public benefits, such absences need not be discouraged.
Reversed.

PRWOR, Pub.L. No. 104-104, 110 Stat. 56, is codified as amendments to various sections, including 42 U.S.C., 7 U.S.C., and 8 U.S.C.