**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1150-16T1

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
SITE REMEDIATION COMPLIANCE
AND ENFORCEMENT,

      Petitioner-Respondent,

v.

RARITAN SHOPPING CENTER, LP,

      Respondent-Appellant.

_____

Argued May 2, 2018 – Decided October 17, 2018

Before Judges Fuentes, Koblitz and Suter.

On appeal from the New Jersey Department of Environmental Protection.

Lawrence S. Berger argued the cause for appellant (Berger & Bornstein, LLC, attorneys; Lawrence S. Berger, on the brief).

Elspeth L. Faiman Hans, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell,

Assistant Attorney General, of counsel; Elspeth L. Faiman Hans, on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Defendant Raritan Shopping Center, LP (Raritan) appeals the October 6, 2016 Final Decision by the Commissioner of the New Jersey Department of Environmental Protection (Final Decision) that granted summary decision to petitioner Department of Environmental Protection (DEP) and affirmed its January 13, 2014 Administrative Order and Notice of Civil Administrative Penalty Assessment (AONOCAPA), that found Raritan violated certain environmental remediation statutes and regulations and imposed $66,200 in administrative penalties. Because the Final Decision was entered following the parties' motions for summary disposition, our review on the legal issue is de novo. L.A. v. Bd. of Educ. of City of Trenton, 221 N.J. 192, 204 (2015). We affirm the Final Decision based on our review of the uncontested facts, statutes and case law and determine that the penalties imposed do not represent an abuse of discretion.

I

Raritan owns a shopping center in the Borough of Raritan (Borough). It was built on land that from 1959 to 1979, was operated by the Borough as a

municipal landfill.  The landfill closed in 1979.  The property was sold in the mid-1980's to Raritan Center Realty Associates and developed by Raritan Mall Associates.[1]  Raritan Associates hired a consultant to evaluate the contents of the landfill.  The landfill was capped with silty soil, a gravel bed, plastic membrane and protective clay.  Ground water monitoring wells were installed as well as a degasification system.  DEP's approval under the Environmental Cleanup Responsibility Act (ECRA), N.J.S.A. 13:1K-1 to -42,[2] was obtained to transfer the property.  The Borough agreed with DEP to conduct monitoring of the ground water and treatment after 1991.  Sampling at various times showed volatile organic compounds and heavy metals exceeding the ground water permit that may have come from offsite or natural sources.  Raritan Mall Associates built a shopping center on the site.

Raritan purchased the shopping center in March 1993.  Prior to purchase, it hired HTS Environmental Group to conduct environmental testing at the property.  HTS's testing reported the presence of tetrachloroethylene above federal drinking water standards.  However, it noted that the water in the area

---

[1] These entities are not related to Raritan.

[2] ECRA was replaced by the Industrial Site Recovery Act (ISRA) in 1993.  N.J.S.A. 13:1K-6.

"is not used for consumptive purposes" and that "low levels of chemicals of this kind are expected in the groundwater in the vicinity of a closed municipal landfill." HTS recommended that "any additional well testing required by [DEP] be completed in accordance with their instructions or requests." HTS gave its opinion that the property "represents a low environmental risk scenario contingent upon completion of the aforementioned items."

In 2003, a prospective purchaser of the property hired an environmental consulting firm to conduct ground water testing and discovered a "hot spot" of contamination containing levels of benzene, toluene, ethylbenzene, xylenes (BTEX), chlorobenzene, TCE, PCE, dichloroethene (DCE), and vinyl chloride above DEP groundwater-quality standards. Raritan hired Enviro-Sciences, Inc. (ESI) to delineate the extent of the contaminated area. With DEP's approval, Raritan excavated the indicated area that revealed three steel drums, containing "yellow sandy soil of an unknown composition." Raritan disposed of seventeen hundred pounds of hazardous solid waste contaminated with lead and TCE.

DEP and Raritan signed a memorandum of agreement in February 2004, where Raritan acknowledged that TCE was present at the site, but had been removed through soil excavation. Raritan claimed that "[a]ll contaminants found at the site [were] related to the former landfill operations." It

4

acknowledged that "[b]ased on past investigations, both soil and groundwater have been slightly impacted by benzene, toluene, ethylbenzene, and total xylenes, and/or chlorobenzene." The "hot spot" impacted soil and groundwater with TCE, however, "after the impacted soils were excavated," Raritan claimed, "[a] continuing [TCE] source no longer remain[ed] on-site." Raritan agreed to submit a Remedial Investigation Report/Remedial Action Report (RIR/RAR) to DEP.

ESI submitted the RIR/RAR report for Raritan in September 2004. It requested that DEP issue a "No Further Action" letter for the site, but with a "Classification Exception Area" (CEA)[3] to restrict ground water usage because there still were "low" levels of benzene present at the site. DEP rejected this request in March 2007, issuing a Notice of Deficiency, because it claimed ESI's ground water sampling methodology was flawed and the proposed CEA did not address chlorinated compounds that previously had been detected at the site. DEP requested a remedial investigation workplan in sixty days. Raritan

---

[3] DEP may establish a CEA when it determines "that constituent standards for a given classification are not being met or will not be met in a localized area." N.J.A.C. 7:9C-1.6(a). Within that area, DEP shall "define appropriate designated uses." N.J.A.C. 7:9C-1.6(b).

A-1150-16T1

responded in June 2007 by referring any ground water issues to the Borough and did not submit a workplan.

It was not until 2011 that DEP again addressed the RIR/RAR deficiencies with Raritan. DEP advised Raritan by letters of its obligations under the Site Remediation Reform Act (SRRA), N.J.S.A. 58:10C-1 to -29, to retain a licensed site remediation professional (LSRP), complete the remediation within mandatory timeframes, complete an initial receptor evaluation and conduct a proper site evaluation. In December of 2012, Raritan had still not complied, and DEP advised the matter was transferred to enforcement and that it would issue an administrative order with penalties.

DEP issued the AONOCAPA on January 13, 2014. In it, DEP found that "on August 21, 2003, [Raritan] conducted ground water sampling and reported [TCE], cis-1, 2-dichloroethene, vinyl chloride, methylene chloride, benzene, and toluene above the Ground Water Quality Standards (GWQS) at concentrations of 120,000 parts per billion (ppb), 98,000 ppb, and 4,500 ppb, 2,000 ppb, 7.3 ppb, and 1,100 ppb, respectively." Because these were "hazardous substances pursuant to the Spill Compensation and Control Act

[Spill Act], N.J.S.A. 58:10-23.11b," Raritan was responsible under the Spill Act for remediation.[4]

The AONOCAPA alleged Raritan violated applicable regulations by (1) failing to conduct remediation in accordance with N.J.A.C. 7:26C-2.3(a)(3); (2) "fail[ing] to hire [an LSRP] upon the occurrence of one of the events listed in N.J.A.C. 7:26C-2.2(a), and to provide the required information to [DEP] within [forty-five] days as required;" (3) "fail[ing] to submit an initial receptor evaluation within the required timeframe" in accordance with N.J.A.C. 7:26E-1.12(c); and (4) "fail[ing] to pay fees, oversight costs, and [to] submit [the] Annual Remediation Fee Reporting Form."[5] DEP ordered Raritan to cure these violations. The AONOCAPA assessed an aggregate civil administrative penalty against Raritan of $66,200.[6]

---

[4] This reference is to the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.24.

[5] N.J.A.C. 7:26C-2.3(a)(4) requires payment of "all applicable fees and oversight costs as required." N.J.A.C. 7:26C-4.3(a)(4) requires submission of "the annual remediation fee, and the appropriate form."

[6] This included $15,000 for failure to conduct remediation in accordance with N.J.A.C. 7:26C-2.3(a)(3); $15,000 for failure to hire an LSRP pursuant to N.J.A.C. 7:26C-2.3(a)(1); $25,000 for failure to submit an initial receptor evaluation within the required timeframe in accordance with N.J.A.C. 7:26E-1.12(c); and $11,200 for failure to pay fees, oversight costs in accordance with N.J.A.C. 7:26C-2.3(a)(4).

Raritan requested a hearing and the case was transmitted to the Office of Administrative Law as contested. Following cross-motions for summary disposition, the administrative law judge (ALJ) issued an Initial Decision in favor of DEP, finding that "Raritan [was] liable for violations of the Spill Act, the Brownfield Act, the SRRA, and the regulations promulgated under those statutes as a person who 'is in any way responsible for any hazardous substance[,]'" not because it had discharged a hazardous substance, but because it was a current owner of a contaminated site.[7] The ALJ found that Raritan was responsible for remediation because it was a subsequent owner of the real property where the discharge occurred prior to the filing of a final remediation document[8] with [DEP]. Further, "DEP [was] not required to prove the presence

---

[7] The references here are to the Brownfield and Contaminated Site Remediation Act (Brownfield Act), N.J.S.A. 58:10B-1 to -31, and the Site Remediation Reform Act (SRRA), N.J.S.A. 58:10C-1 to -29. The regulations referenced are the Administrative Requirements for the Remediation of Contaminated Sites (ARRCS), N.J.A.C. 7:26C-1.1 to -16.3 and Technical Requirements for Site Remediation (Tech Rules), N.J.A.C. 7:26E-1.1 to -5.8. The ALJ's decision quoted N.J.S.A. 58:10-23.11g(c)(1).

[8] A final remediation document is "a no further action letter or a response action outcome." N.J.A.C. 7:26C-1.3. A no further action letter consists of a written determination by DEP that either there are no contaminants remaining at the site or that the contaminants "have been remediated in accordance with applicable remediation statutes, rules, guidance and all applicable permits and authorizations have been obtained." Ibid. A response action outcome is "a written determination by a [LSRP] that the site was remediated in accordance with all applicable statutes, rules and guidance . . . ." Ibid.

of hazardous substances as of May 7, 2009 or May 7, 2012, in order to hold Raritan responsible" and that Raritan's failure to file "a final remediation document . . . and meet the requirements of N.J.S.A. 58:10-1.3(b), N.J.A.C. 7:26C-2.3, and N.J.A.C. 7:26E-1.2."

On October 6, 2016, the Commissioner issued the Final Decision that adopted the Initial Decision, finding "the ALJ correctly concluded that Raritan is liable for violations of the Spill Act, the Brownfield Act, SRRA, and the rules governing the remediation of contaminated sites." The Commissioner found that Raritan was a responsible party under the Spill Act as "the current owner of a property on which hazardous substances have been discharged and for which a final remediation document has not been filed." As such, it was "strictly, jointly and severally liable under the Spill Act and must complete remediation in accordance with the Brownfield Act and SRRA . . . regardless of the source of the discharge, Raritan's fault in causing the discharge, or the assumption of ground water monitoring responsibilities by the Borough." The Commissioner found that Raritan was not an innocent purchaser under the Spill Act because Raritan could not show "that at the time of acquisition, it 'did not know and had no reason to know that any hazardous substance had been discharged at the real property,'" as required by N.J.S.A. 58:10-23.11g(d)(5). Further, the case of

Dep't of Envtl. Prot. v. J.T. Baker Co., 234 N.J. Super. 234 (Ch. Div. 1989), aff'd per curiam, 246 N.J. Super. 224 (App. Div. 1991), citied by Raritan, was inapplicable, because "Raritan is liable not as a discharger but rather as the informed purchaser and owner of contaminated property which is in need of remediation." The Commissioner concluded the ARRCS regulations did apply because "the necessary remediation is of ground water contamination, not the landfill itself." The Final Decision affirmed DEP's administrative penalty against Raritan, assessed under N.J.A.C. 7:26C-9.5. It ordered Raritan to conduct the remediation, hire an LSRP, submit an initial receptor evaluation, pay fees and costs and pay the administrative penalty.

On appeal, Raritan contends that DEP cannot impose penalties under the Spill Act for discharges prior to its effective date in 1977, that Raritan did not discharge hazardous materials and even if there were a discharge, DEP did not prove that it occurred after 1977. Raritan argues that the regulations relied on by DEP are not applicable because this is a closed landfill. In addition, it asserts DEP did not prove the presence of any contaminants at the site during relevant periods. Raritan claims it is not liable for clean up or removal costs under the Spill Act or administrative penalties.

A-1150-16T1

We review de novo an agency's summary decision because it is a legal determination. L.A., 221 N.J. at 204. The standard governing agency determinations under N.J.A.C. 1:1-12.5 is "substantially the same as that governing a motion under Rule 4:46-2 for summary judgment in civil litigation." Id. at 203 (quoting Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121-22 (App. Div. 1995)). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). We are not "bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue." L.A., 221 N.J. at 204 (alteration in original) (quoting Dep't of Children & Familes, N.J. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 302 (2011)).

Raritan contends DEP cannot impose penalties or other relief under the Spill Act for discharges that occurred prior to its 1977 effective date. It further argues that there was no "discharge" with which Raritan could be charged.

Under the Spill Act, "any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred." N.J.S.A. 58:10-23.11g(c)(1). "The strict liability imposed has been held to be broad in scope." T & E Ind. v. Safety Light Corp., 227 N.J. Super. 228, 244 (App. Div. 1988) (citations omitted). "The phrase [in any way responsible] must be broadly construed to encompass either ownership or control over the property at the time of the damaging discharge, or control over the hazardous substance that caused the contamination." N.J. Schs. Dev. Auth. v. Marcantuone, 428 N.J. Super. 546, 559 (App. Div. 2012). See N.J. Dep't of Envtl. Prot. v. Dimant, 212 N.J. 153, 177 (2012).

Liability may exist "for an owner who purchased previously contaminated land and failed to conduct due diligence prior to purchase . . . ." Marcantuone, 428 N.J. Super. at 561. DEP's regulations provide that a person "in any way responsible" under the Spill Act (a responsible party) includes "[e]ach subsequent owner of the real property where the discharge occurred prior to the filing of a final remediation document with the Department." N.J.A.C. 7:26C-1.4(a)(4). The regulations narrowly define a final remediation document as either a "no further action letter or a response action outcome." N.J.A.C. 7:26C-

1.3. An "innocent purchaser" who satisfies all the provisions of N.J.S.A. 58:10-23.11g(d)(5) is not liable for cleanup and removal costs.

A responsible person under the Spill Act is to remediate hazardous substances that have been discharged in accord with requirements set forth in the Brownfield Act, the SRRA, and the ARRCS and Tech Rules regulations. The Legislature intended through enactment of the SRRA to "improve the efficiency and speed with which environmental sites are remediated." Des Champs Labs. v. Martin, 427 N.J. Super. 84, 99 (App. Div. 2012). It created a new "paradigm." Ibid. "[S]ites would be remediated without prior Department[al] approval, but while still requiring the Department to maintain a certain level of oversight." Ibid. (alteration in original) (quoting 43 N.J.R. 1077(a), 1078 (May 2, 2011)).

Under the Brownfield Act, the Legislature set forth the requirements for remediation by "a person in any way responsible for a hazardous substance" under the Spill Act. N.J.S.A. 58:10B-1.3(a). These include hiring a LSRP, establishing a remediation funding source, paying applicable fees and costs required by DEP, allowing access to the site and to documents, and meeting remediation timeframes. N.J.S.A. 58:10B-1.3(b). Relevant here, DEP required Raritan to conduct remediation in accordance with N.J.A.C. 7:26C-2.3(a)(3); to

hire an LSRP, N.J.A.C. 7:26C-2.3(a)(1); to submit an initial receptor evaluation, N.J.A.C. 7:26E-1.12(c); to pay fees and oversight costs, N.J.A.C. 7:26C-2.3(a)(4), and submit the Annual Remediation Fee Reporting Form, N.J.A.C. 7:26C-4.3(a)(4).

We agree with the Final Decision that pursuant to N.J.A.C. 7:26-1.4(a)(4)(ii), Raritan is a responsible party under the Spill Act as the owner of property where a discharge occurred previously, no final remediation document had been issued, and the party did not qualify as an innocent purchaser. Raritan was required as a responsible party under the Spill Act to comply with the Spill Act, the Brownfield Act, the SRRA and DEP's regulations. It did not comply. It did not hire an LSRP, submit a receptor evaluation, conduct a further a site investigation, or pay required fees. This triggered enforcement by DEP and the assessed administrative penalty.

DEP notified Raritan as early as March 2007 that there were deficiencies in its RIR/RAR that required additional investigation and that it would not issue a no-further action letter. These deficiencies were not cured by Raritan. Once the SRRA was enacted in 2009, Raritan then had to conduct remediation in accordance with it and the promulgated regulations. The Commissioner's conclusion that there was contamination on the site and that Raritan never

14

received a final remediation document from DEP comports with the evidence. As such, Raritan was responsible to remediate in accord with DEP's regulations and, having failed to do so, was liable for enforcement and administrative penalties.

J.T. Baker Co., 234 N.J. Super. at 246-47 does not afford Raritan a safe harbor. In Baker, DEP sought to impose penalties for discharges that occurred before 1977. The Chancery judge concluded the Spill Act could not be applied retroactively to penalize a company for discharges that occurred before the Act became effective. However, Baker was decided before enactment of the SRRA, which requires a responsible person under the Spill Act to remediate consistent with the SRRA once a discharge has occurred. Raritan does not dispute a discharge occurred affecting the ground water or that by May 2012, it had not obtained a final remediation document from DEP.

The "innocent purchaser" portion of the Spill Act as amended in 2001 makes it clear that Raritan is a responsible person. Under that section:

> [a] person, including an owner or operator of a major facility, who owns real property acquired prior to September 14, 1993 on which there has been a discharge, shall not be liable for cleanup and removal costs or for any other damages to the State or to any other person for the discharged hazardous substance pursuant to subsection c. of this section or pursuant to civil common law, if that person can establish by a

A-1150-16T1

preponderance of the evidence that subparagraphs (a) through (d) apply:

(a) the person acquired the real property after the discharge of that hazardous substance at the real property;

(b) (i) at the time the person acquired the real property, the person did not know and had no reason to know that any hazardous substance had been discharged at the real property, or (ii) the person acquired the real property by devise or succession, except that any other funds or property received by that person from the deceased real property owner who discharged a hazardous substance or was in any way responsible for a hazardous substance, shall be made available to satisfy the requirements of P.L.1976, c.141;

(c) the person did not discharge the hazardous substance, is not in any way responsible for the hazardous substance, and is not a corporate successor to the discharger or to any person in any way responsible for the hazardous substance or to anyone liable for cleanup and removal costs pursuant to this section;

(d) the person gave notice of the discharge to the department upon actual discovery of that discharge.

[N.J.S.A. 58:10-23.11g(d)(5).]

All four elements of this section must be met to assert the innocent purchaser defense under the Spill Act. See Marcantuone, 428 N.J. Super. at 549-50; 560-61. Marcantuone involved post-contamination purchasers. We said in Marcantuone that "liability may exist for an owner who purchased

16

previously contaminated land and failed to conduct due diligence prior to purchase." Id. at 561. This was based on the Legislature's 2001 amendment of the Spill Act. We stated that:

> [u]nder N.J.S.A. 58:10-23.11g(d)(5), defendants must prove that, at the time they acquired the property in 1985, they did not know or have reason to know that hazardous substances had been discharged on the property. To meet this defense, defendants must prove that they undertook, "at the time of acquisition, all appropriate inquiry on the previous ownership and uses of the property based upon generally accepted good and customary standards." N.J.S.A. 58:10-23.11g(d)(5) . . . . Thus, the trial court must first determine what the generally accepted good and customary standards were at the time defendants acquired title to the property. Defendants can then present evidence as to what pre-purchase efforts and investigation they undertook. Liability will depend upon whether defendants satisfied the prevailing standard as found by the court.
>
> [Marcantuone, 428 N.J. Super. at 560-61.]

Here, Raritan could not establish that it "did not know and had no reason to know that any hazardous substance had been discharged at the real property." When it purchased the property in March 1993, the Borough was conducting ongoing ground water monitoring that showed elevated levels of hazardous substances. Its own consultant, HTS, found similar results. HTS recommended that Raritan complete "any additional well testing required by NJDEP." Therefore, Raritan knew or had reason to know that the ground water had

contamination from hazardous substances. It did not comply with DEP's direction to resolve deficiencies in its RIF/RAF, which precluded it from satisfying the innocent purchaser defense.

We disagree with Raritan that because this site previously was a landfill, the ARRCS and Tech Rules regulations do not apply. Raritan purchased a shopping center; it did not own, operate or close a landfill.[9] As such, the exception in N.J.A.C. 7:26C-1.4(c)(2) about remediating a landfill did not apply in this context. We also defer to the Commissioner's interpretation of DEP

---

[9] In its reply brief, Raritan argues that the Legacy Landfill Act, N.J.S.A. 13:1E-125.1 to -125.9 is applicable here. Under that Act, an LSRP is not required. Rather, N.J.S.A. 13:1E-125.7 provides that an owner of a legacy or closed sanitary landfill facility "that undertakes any activity that includes the placement or disposal of any material, regrading, compression, venting, construction or installation of monitors or wells at the legacy landfill or a closed sanitary landfill shall hire a New Jersey licensed professional engineer to perform the closure and to oversee any other activities performed [there]." When the requirement for an LSRP was removed from the Act, the pertinent statement with Senate Floor Amendments stated that one of the floor amendments was to "remove the requirement that a [LSRP] oversee activity [at the closed landfill] that accepts for placement additional waste or material and instead [only] require a N.J. licensed professional engineer to oversee those activities." Senate Floor Amendments, Statements to S. 2861 (June 20, 2013). Notably, this Act did not expressly reference the remediation of hazardous material from, a discharge, or a landfill underlying a commercial facility with human occupation. Thus, we reject Raritan's argument that the Legacy Landfill Act was controlling in this context.

regulations. See In re Freshwater Wetlands General Permit No. 16, 379 N.J. Super. 331, 341-42 (App. Div. 2005).

Raritan contends the AONOCAPA should have been dismissed because DEP did not establish that there existed contaminants on the site either in May 2009, when the SRRA was enacted, or May 2012, when the SRRA became effective. Raritan argues the discharge was fully remediated when ESI excavated the "hot spot." However, it was not disputed that Raritan did not receive any final remediation documents from DEP. Thus, after May 9, 2012, Raritan was required to remediate consistent with the SRRA and regulations because it did not have a final remediation document from DEP. N.J.A.C. 7:26C-1.4(a)(4).

III

We will not reverse the Commissioner's order assessing penalties unless we find the decision to be "'arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole.'" Kadonsky v. Lee, 452 N.J. Super. 198, 202 (App. Div. 2017) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). We "defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." K.K. v. Div. of

<u>Med. Assistance & Health Servs</u>., 453 N.J. Super. 157, 160 (App. Div. 2018) (quoting <u>In re Virtua-West Jersey Hosp.</u>, 194 N.J. 413, 422 (2008)).

Here, the Commissioner imposed administrative penalties consistent with the regulatory violations and in accord with DEP's penalty regulation. These were the minimum "base" penalties for these violations. <u>See</u> N.J.A.C. 7:26C-9.5 -9.6. Penalties can be assessed where enforcement is necessary to achieve remediation. <u>See</u> N.J.S.A. 58:10B-1.3(e) (failure to comply can result in enforcement under N.J.S.A. 58:10-23.11u(c)(1), which authorizes civil administrative penalties). There was nothing arbitrary, capricious or unreasonable about the Commissioner's assessment of the penalties in this case. The Commissioner applied the regulations.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1150-16T1