**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5177-16T4

M.P.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and OCEAN COUNTY
BOARD OF SOCIAL SERVICES[1],

     Respondents-Respondents.

_____

Argued October 30, 2018 – Decided November 28, 2018

Before Judges Hoffman and Geiger.

On appeal from New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Laurie M. Higgins argued the cause for appellant (Sb2 Inc., attorneys; John Pendergast, on the brief).

Caroline Gargione, Deputy Attorney General, argued the cause for respondent Division of Medical

---

[1] Respondent Ocean County Board of Social Services has not filed a brief.

Assistance and Health Services (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Caroline Gargione, on the brief).

PER CURIAM

Petitioner M.P. appeals from the final agency decision of respondent Division of Medical Assistance and Health Services (Division) denying his application for Medicaid benefits. We affirm.

Petitioner was admitted to Monmouth Medical Center (Monmouth Medical) on July 31, 2015. On August 11, 2015, Monmouth Medical submitted an Enhanced At-Risk Criteria Screening Tool (EARC-PAS) to the Division of Aging Services, Office of Community Choice Options (OCCO) authorizing petitioner's transfer from the hospital to a Medicaid certified nursing facility.[2] The EARC-PAS is a screening tool for a ninety-day authorization for acute care hospital patients being discharged to a Medicaid certified nursing facility. Following review of the EARC-PAS, petitioner was authorized by OCCO for an initial ninety days pending determination of Medicaid clinical and financial eligibility. Thus, although petitioner's transfer to a nursing facility for up to ninety days was authorized, he was not yet determined to be Medicaid eligible.

---

[2] OCCO is responsible for establishing clinical eligibility for individuals seeking Medicare services through a waiver program.

Petitioner was discharged to Liberty Royal Rehabilitation and Health Care Center (Liberty Royal), a Medicaid certified nursing home, on August 12, 2015. Less than one week later he was transferred to Crystal Lake Nursing and Rehabilitation Center (Crystal Lake), another Medicaid certified nursing home, on August 17, 2015. Petitioner remained at Crystal Lake until his discharge home on November 6, 2015.

Nursing facilities are required to submit a request for Medicaid eligibility within forty-eight hours of a patient's admission. N.J.A.C. 8:85-1.8(c). The request is made by submission of a Notification from Long-Term Care Facility of the Admission or Termination of a Medicaid Patient (LTC-2) form. Ibid. Submission of an LTC-2 form triggers Pre-Admission Screening (PAS) by OCCO to determine the patient's eligibility for Medicaid payment of nursing facility services. N.J.A.C. 8:85-1.8(d). Neither Liberty Royal nor Crystal Lake submitted an LTC-2 form on petitioner's behalf within forty-eight hours of his admission to their facilities.

Crystal Lake submitted an LTC-2 form on petitioner's behalf on November 19, 2015, some thirteen days after his discharge home on November 6, 2015. At the time petitioner applied for Medicaid, petitioner's monthly income was $1080.96, which exceeded the federal poverty level guidelines. At

the time of his admission, petitioner had to earn $1010 or less per month, to be eligible for Medicaid payment of nursing facility services. See N.J.A.C. 10:71-3.14(e)(2), -5.3(a)(18). Given his income level, petitioner could only be eligible for Medicaid through the Managed Long Term Care Service and Support (MLTSS) waiver program approved by the Centers for Medicare and Medicaid Services pursuant to 42 U.S.C. § 1315. The special terms and conditions of the MLTSS waiver program include both clinical and financial eligibility components. Clinical eligibility for institutional waiver services require an applicant to meet nursing facility level of care. See 42 C.F.R. § 435.236; 42 C.F.R. § 435.1005; N.J. Comprehensive Waiver Demonstration, Special Terms and Conditions, 11-w-00279/2 (Title XIX), at 18-19 (August 14, 2014).

Upon receiving the LTC-2 form, the Ocean County Board of Social Services submitted a referral to OCCO for a clinical eligibility determination. Notwithstanding the untimeliness of the LTC-2 form, OCCO attempted to schedule the PAS required to establish Medicaid clinical eligibility. Upon being contacted by OCCO staff, petitioner refused to meet with OCCO staff, stating he was not in need of any services. As a result, a PAS was not completed, leading to the denial of petitioner's Medicaid application pursuant to N.J.A.C. 10:71-3.14.

4

Petitioner timely appealed the denial of his Medicaid application. The appeal was transferred to the Office of Administrative Law (OAL) as a contested case, and a fair hearing was conducted by an Administrative Law Judge (ALJ). Petitioner did not attend the fair hearing. The ALJ issued an initial decision affirming the denial of petitioner's Medicaid application and dismissing his appeal. No exceptions were filed. The Division's final agency decision adopted the ALJ's initial decision.

The Division's Director explained that the process for determining clinical eligibility places responsibility on the nursing home to seek a PAS by submitting the required form within 48 hours of admission to the facility. Here, the nursing home submitted the required form on November 19, 2015; nearly three months after having been admitted and a week and a half after being discharged. When OCCO attempted to reach petitioner to complete a PAS, petitioner refused to cooperate or meet with OCCO staff.

The Director further explained:

> Petitioner's only path to eligibility for Medicaid benefits is under the Long-Term Care Services and Supports (LTSS) program that permits use of a higher income level – 300 percent of the SSI benefit amount. In order for eligibility to be granted at this higher income level, nursing level of care must be necessary. See 42 CFR § 435.236 and 42 CFR § 435.1005. In order to determine medically necessary services in a

5

nursing home, a pre-admission screening (PAS) is completed by "professional staff designated by the Department, based on a comprehensive needs assessment which demonstrates that the recipient requires, at a minimum, the basic [nursing facility] services described in N.J.A.C. 8:85-2.2." N.J.A.C. 8:85-2.1(a). See also, N.J.S.A. 30:4D-17.10, et seq.

This appeal followed. Petitioner argues that because he completed both of the evaluations required by the Division, the denial of his Medicaid application was arbitrary, capricious, and unreasonable.

Appellate review of the Division's final agency action is limited. K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018). We "defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "[An] appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." Ibid.

A presumption of validity attaches to the agency's decision. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). The party challenging the validity of an agency's decision has the burden of showing that it was arbitrary, capricious, or

unreasonable.  Barone v. Dep't of Human Servs., 210 N.J. Super. 276, 285 (App. Div. 1986), aff'd, 107 N.J. 355 (1987).  "Deference to an agency decision is particularly appropriate where interpretation of the Agency's own regulation is in issue."  I.L. v. N.J. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006).  However, "an appellate court is 'in no way bound by an agency's interpretation of a statute or its determination of a strictly legal issue.'"  R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)).

In order to qualify for Medicaid benefits under the MTLSS waiver program, petitioner was required to meet both financial and clinical eligibility requirements.  Clinical eligibility is assessed through a PAS completed by professional staff designated by the Division, "based on a comprehensive needs assessment that demonstrates that the beneficiary requires, at a minimum, the basic [nursing facility] services described in N.J.A.C. 8:85-2.2."  N.J.A.C. 8:85-2.1(a).

Petitioner argues the EARC-PAS completed while he was a patient at Monmouth Medical provided clinical authorization for the eighty-seven days he

was a patient at the two nursing homes. The EARC-PAS provides preliminary authorization for an initial ninety-day stay at a nursing facility, subject to later determination of Medicaid clinical and financial eligibility. The EARC-PAS does not determine Medicaid eligibility. Similarly, completion of a Level 1 Pre-Admission Screening and Resident Review (PASRR), a screening tool to determine whether an individual has a mental illness or intellectual disability, 42 C.F.R. §§ 483.100 to -483.138, was not a determination of Medicaid clinical eligibility. Clinical eligibility is determined through the PAS procedure. N.J.A.C. 8:85-1.8.

The nursing home is responsible for notifying OCCO of petitioner's admission to the facility and that a PAS must be completed. An LTC-2 was not submitted within forty-eight hours of petitioner's admission. Instead, it was submitted thirteen days after his discharge home. Thereafter, petitioner refused to cooperate in completion of a PAS. Accordingly, petitioner never established clinical eligibility for the MLTSS waiver program. Therefore, petitioner's Medicaid application was properly denied.

Applying the governing standards of review and legal principles, we conclude the Director's findings are supported by sufficient credible evidence in the record, and that the final agency decision was not arbitrary, capricious, or

8

unreasonable. On the contrary, the final agency decision sustaining the denial of petitioner's Medicaid application was appropriate.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION