**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5024-16T2

M.P.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES, and CAMDEN COUNTY
BOARD OF SOCIAL SERVICES,

     Respondents-Respondents.

_____

Argued November 14, 2018 – Decided December 17, 2018

Before Judges Fisher and Suter.

On appeal from New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Donald B. Mark argued the cause for appellant.

Jacqueline R. D'Alessandro, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, on the brief).

PER CURIAM

Petitioner M.P. appeals the final agency decision of the New Jersey Division of Medical Assistance and Health Services (DMAHS) that denied his application for Medicaid benefits under the Medically Needy Program. We affirm the decision that M.P. was not eligible because he stipulated his resources were in excess of the program's requirements.

M.P. and his wife resided at the Elmwood Hills Healthcare Center in 2014.[1] On October 14, 2014, M.P. made application to the Camden County Board of Social Services (CCBSS) for Medicaid benefits under the Medically Needy Program. N.J.A.C. 10:70-1.1 to -7.3. The Medically Needy Program extends limited Medicaid program benefits "to certain groups of medically needy persons whose income and/or resources exceeds the standards for the Medicaid program but are within the standards for the Medically Needy Program, or whose income exceeds the standards for the Medically Needy Program but is insufficient to meet their medical expenses." N.J.A.C. 10:70-1.1(a).

---

[1] M.P. passed away in July 2015. His wife passed away in 2014 and is not an appellant.

M.P. applied for benefits under the Medically Needy Program because in 2014, his combined gross monthly income from Social Security and a pension was $2637.72. This exceeded the Medicaid Only income cap of $2163. In 2015, his combined gross monthly income was $2660.72, also in excess of the cap. Thus, he could not qualify for the Medicaid Only program, and made application to the Medically Needy Program. The Medically Needy Program also had a resources cap of $4000. N.J.A.C. 10:70-5.1(a).

When M.P. applied for the Medically Needy Program in October 2014, it covered nursing facility services. See N.J.A.C. 10:71-4.11(h). Effective on December 1, 2014, New Jersey amended its Medicaid State Plan to remove nursing facility benefits from the Medically Needy Program, replacing it with Qualified Income Trusts (QIT), which allowed individuals to avoid counting certain income when determining financial eligibility for Medicaid. See 42 U.S.C. §1396p(d)(4)(B); N.J.A.C. 10:71-4.11(h). DMAHS advised of the change stating:

> [t]he State of New Jersey is adopting the use of Qualified Income Trusts (QITs) to qualify for the Medicaid Only program effective December 1, 2014. Beginning December 1, 2014, the Medically Needy program will no longer be accepting new applications to cover nursing facility services. Individuals who were receiving nursing facility benefits through the Medically Needy program prior to December 1, 2014

> will be permitted to maintain their coverage as long as they remain otherwise eligible and remain in the nursing facility.

> [Medicaid Communication No. 14-15.]

M.P.'s application for Medicaid under the Medically Needy Program remained pending in 2015 and his attorney prepared a QIT for him. The CCBSS requested financial statements regarding identified bank accounts and copies of checks that exceeded $500.

On January 27, 2016, CCBSS denied M.P.'s application for Medicaid benefits because his available resources exceeded the $4000 resource cap for the Medically Needy Program. CCBSS stated "his resources were $2744.18 in a checking account and $23,682.52 in a trust account totaling $26,426.70 as of [August 31, 2014]."

The trust account related to an order to show cause and verified complaint filed in the Superior Court by M.P.'s daughter, Diana, seeking a fee of $15,500 as compensation for her services to her parents as attorney-in-fact. The court granted her request in September 2014. Pursuant to a contract titled an "irrevocable deposit," an agreement was reached by Diana, in her individual capacity, Diana as attorney-in-fact for M.P. and his wife, and M.P.'s attorney, to deposit $15,500 in the attorney's trust account. The funds were to be distributed

to the law office to pay "outstanding legal fees and costs incurred for the legal services rendered by the [l]aw [o]ffice for [M.P. and his wife]"; to pay Diana fees awarded from the order to show cause and, if funds remained, to pay Elmwood Center as "reimbursement for the Medicaid benefits that have been paid" for M.P. and his wife.  With the exception of the law firm, the contract provided that Diana, M.P. and his wife could not be paid without the consent of Medicaid.

M.P.'s attorney requested a fair hearing to challenge the denial of Medicaid eligibility, contending CCBSS erred by including the $15,500 in his firms' trust account as an available resource and arguing these monies represented fees awarded to Diana as attorney-in-fact by the Superior Court.  He also alleged CCBSS's delay in processing the application violated Medicaid regulations.

Following conferences with the Administrative Law Judge (ALJ), the parties agreed to a "stipulation of facts" prior to filing cross-motions for summary disposition.  In the stipulation, M.P. agreed his assets from November 1, 2014, to March 1, 2015, exceeded $4000.[2]  By April 1, 2015, however, his

---

[2]  The stipulation of facts provided M.P. owned the following assets:

assets were $3937.31 and they continued to decline through July 1, 2015. The parties stipulated the legal issue in dispute was limited to "[d]oes the DMAHS Medicaid Communication No. 14-15, issued on December 19, 2014, apply to M.P.'s Medically Needy application filed on October 14, 2014?"

The ALJ's Initial Decision denied M.P.'s request for Medicaid eligibility, finding that although M.P. was clinically eligible for the program and his income did not deprive him of eligibility in the Medically Needy Program, M.P.'s "resources were not successfully spent down until April 2015." After December 1, 2014, the State adopted the use of QIT's to qualify for Medicaid, but M.P. never "properly funded" the QIT. The ALJ affirmed the denial of M.P.'s Medicaid eligibility "because he did not meet the financial requirements for the Medicaid [n]ursing [h]ome [p]rogram as of August 31, 2014."

| Date | Amount |
|------|--------|
| 11/01/2014 | $13,155.18 |
| 12/01/2014 | $12,003.75 |
| 01/01/2015 | $8,382.18 |
| 02/01/2015 | $6,575.89 |
| 03/01/2015 | $5,693.96 |
| 04/01/2015 | $3,937.31 |
| 05/01/2015 | $2,845.31 |
| 06/01/2015 | $2,407.94 |
| 07/01/2015 | $1,699.82 |

The Final Agency Decision adopted the ALJ's Initial Decision, finding that M.P. failed to meet the resources standard of the Medically Needy Program until April 2015, "by which time [that program] no longer covered nursing home services." The Director noted the State "received federal authority to cease covering nursing home services" under the Medically Needy Program but allowed persons who had income above eligibility standards "to place the excess income in a QIT . . . and obtain Medicaid benefits." This did not apply to persons who were receiving nursing home services under the Medically Needy Program before December 1, 2014. M.P. was not part of that program prior to December 1 and his resources exceeded the $4000 resource cap. After December 1, the Medically Needy Program no longer covered nursing home services and thus, M.P. was not eligible under that program. The Director found CCBSS correctly reviewed M.P.'s Medicaid application to determine if he was eligible for any other Medicaid programs, but found he was not eligible under the Medicaid Only program, which was "the only other program that covered nursing home services."

On appeal, M.P. contends that although DMAHS terminated the Medically Needy Program for nursing home services for new applications filed on or after December 1, 2014, this change did not apply to M.P. whose

7

application for Medicaid was filed in October 2014, before the change. He also argues that CCBSS's failure to timely process M.P.'s Medicaid application should be taken into account because he might have been able to take steps to remediate his eligibility problem had he known and then transferred the excess funds into an irrevocable funeral trust under N.J.A.C. 10:71-4.4. There is no merit in these arguments.

We review an agency's decision for the limited purpose of determining whether its action was arbitrary, capricious or unreasonable. K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018). "An administrative agency's decision will be upheld 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 25 (2011)). "The burden of demonstrating the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 349 (App. Div. 2010) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)). We "defer to the specialized or technical expertise of the agency charged with administration of a regulatory

system." K.K., 453 N.J. Super. at 160 (quoting In re Virtua-W. Jersey Hosp. Voorhees for Certificate of Need, 194 N.J. 413, 422 (2008)). However, we are not bound by the "agency's interpretation of a statute or its determination of a strictly legal issue." In re Virtua-W., 194 N.J. at 422 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

"Medicaid is a federally-created, state-implemented program that provides 'medical assistance to the poor at the expense of the public.'" In re Estate of Brown, 448 N.J. Super. 252, 256 (App. Div.) (quoting Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004)), certif. denied, 230 N.J. 393 (2017); see also 42 U.S.C. § 1396-1. To receive federal funding, the State must comply with all federal statutes and regulations. Harris v. McRae, 448 U.S. 297, 301 (1980).

In New Jersey, the Medicaid program is administered by DMAHS pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5. Through its regulations, DMAHS establishes "policy and procedures for the application process." N.J.A.C. 10:71-2.2(b). "[T]o be financially eligible, the applicant must meet both income and resource standards." Brown, 448 N.J. Super. at 257; see N.J.A.C. 10:71-3.15; N.J.A.C.

10:71-1.2(a). The local county welfare agencies (CWA) evaluate Medicaid eligibility. N.J.S.A. 30:4D-7a; N.J.A.C. 10:71-1.5, 2.2(c).

The Medically Needy Program extended Medicaid benefits to persons whose income and or resources exceeded the standards for the Medicaid Only program but whose income was not sufficient to meet their medical expenses. N.J.A.C. 10:70-1.1(a). No one disputed that M.P. was clinically eligible for the program. N.J.A.C. 10:70-3.4. However, to qualify, the applicant's resources must be less than the $4000 resource eligibility limit for an individual in N.J.A.C. 10:70-5.1(a). M.P. stipulated that his resources exceeded this amount until April 1, 2015. The record supports that he simply did not qualify for the program when he applied because his resources exceeded the eligibility cap.

M.P.'s resources dipped below the eligibility resource level on April 1, 2015, but by that time, the Medically Needy Program no longer was available for nursing home services. M.P. contends that his application was not a "new" application filed after December 1, 2014, and therefore he argues it should have been grandfathered into the program once his resources were under $4000.

M.P. cites no authority for this. The State amended its Medicaid plan effective on December 1, 2014, to remove nursing facility benefits from the Medically Needy Program, but provided that the medically needy could apply

for, and establish, Medicaid eligibility through the use of a QIT. DMAHS's Communication No. 14-15 made clear that unless a person was receiving Medicaid under the Medically Needy Program by December 1, 2014, reimbursement for nursing home expenses would no longer be available under the plan. The State must conform with its State plan to receive available federal financial participation. Harris, 448 U.S. at 301. DMAHS was not arbitrary, unreasonable or capricious in denying eligibility to M.P. after December 1, 2014, because he was not receiving Medicaid benefits at that time and the program was no longer available for these type of expenses.

M.P. stipulated to his income and resources. DMAHS was not acting in an arbitrary, capricious or unreasonable manner by relying on the stipulations made by the parties.[3] "Agencies are well within their authority to adopt stipulations as fact-finding tools, as long as they evaluate the stipulations and the parties have had an opportunity to argue against." In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, 330 N.J. Super. 65, 111 (App. Div. 2000). M.P.'s counsel signed the stipulation which appears to have been prepared by his office.

---

[3] In light of the stipulation, we have no need to determine whether the $15,500 in the attorney trust account was a countable resource. Counsel for M.P. argues these funds were not available for M.P. because of the irrevocable deposit, but all of these funds were paid to that law firm for legal fees that were incurred by M.P. and his wife for this case.

CCBSS's evaluation of M.P.'s application for benefits exceeded the processing time set forth in DMAHS's regulations. See N.J.A.C. 10:70-2.1(d)(1) (providing with exceptions, that disposition is to be in thirty days). M.P.'s attorney claims he would have established an irrevocable funeral trust under N.J.A.C. 10:71-4.4 had he known that CCBSS would deny his application based on excess available resources. There was nothing, however, that prevented this during the time the application was pending with CCBSS. There also was no evidence that CCBSS's delay was based on anything other than the need for additional financial information.

CCBSS reviewed M.P.'s eligibility for other programs, including the Medicaid Only program that covered nursing home services, but his income exceeded the eligibility amount. The ALJ found that M.P.'s QIT, prepared in 2015, "was never properly funded." Counsel did not argue otherwise. We do not know if M.P. would qualify were the QIT properly funded.

After carefully reviewing the record and the applicable legal principles, we conclude that M.P.'s further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12